17-7060. Counsel, you may proceed. Your Honor, as I may it please the court, my name is Andrew Casey on behalf of the appellant Robbie Burke, who is the personal representative of the significant facts before the court. Local jail authorities transported John Kaczynski to the Eastern Oklahoma Medical Center on March 13, 2014. There, Appellee Dr. Holdman met with and observed Mr. Kaczynski, and the merits of the case involved numerous medical derelictions that happened as a result of that, including failure to admit Mr. Kaczynski for further treatment, failure to control elevated blood sugar levels, failure to investigate chest pain, and loss of septicemia, all of which contributed to Mr. Kaczynski's untimely death. Here, Appellee seeks from this court immunity from liability for those tortious conduct, and instead of providing treatment, he had provided over-the-counter medications and released him back to the jail where he later died and an estate was created in lawsuit. Counsel, before we get to the immunity issue, we asked for some briefing on the appellate jurisdiction question, and both sides of that appreciate the briefs. But I had a question for you. We have this situation where there were multiple claims, multiple parties. We're now down to Dr. Holdman, but some of the claims were dismissed with prejudice, some without prejudice. We had some Rule 54 mixed in there. But if I'm understanding your position now, we have a final order across the board because the passage of time has caused the statute of limitations and the savings clause to run. Is that – have I got that right so far?  Okay. So here's my question. Is it appropriate, though, for us to base our appellate jurisdiction on the contingent future possibility that were Ms. Burke to refile the claims that have been dismissed without prejudice, the defendants would assert the statute of limitations affirmative defense? I understand the time has run, but what if they choose not to assert the affirmative defense? Isn't there still a possibility that we don't have a final judgment here? I would disagree with that, Your Honor, only to the extent that the Tenth Circuit and a case cited by Dr. Holdman has actually presented this question before. Whenever you look at the case of Hyatt v. the Board of Regents for Oklahoma College, and Judge Mathison, you were a part of that panel for that particular decision, you have the exact same savings statute involved, which is Title 12, Oklahoma Statute Section 100, that had forbidden a further refiling. Now, in that case, in Hyatt, in the exact same situation as here, that procedural error could have not been done by the parties. But the Court still found jurisdiction there without a Rule 54 certification or without any other order because it was effectively excluded from federal court, which is the language that is inside Amazon v. Dirt Camp and is inside Jackson v. State Volvo. That language and that consideration is the ultimate critical determination that the Tenth Circuit looks to whenever it's looking at a dismissal without prejudice under these circumstances. Clearly, in this case, all of the policy matters for finality have been met. There's no refiling that is done. As of March 7th, there's no way to do it without violating Section 100. But in addition, there's nothing left for the district court to do but effectuate judgment in this case. Those are the critical determinations that the Tenth Circuit ruled is applicable whenever we look at jurisdiction for this. So as we sit here today on May 15th, 2018, you have jurisdiction to enter a decision on this case. I suppose the risk and the hypothetical that, because time has run and the statute of limitations has run, that the refiling that the defendant may not assert the running of the statute of limitations, that risk would be true in almost any dismissal. I guess it would be true even if the Court said this is a final judgment, I'm entering judgment against you, and it's final and period. I guess the parties could still sue again and choose not to assert collateral estoppel as an argument or res judicata, couldn't they? I agree, Judge Ebel. And the reason that I agree is because even in this case, we had settled with prejudice for a county matter, etc. There's nothing precluding new lawyers from entering the case and trying to bring up a new lawsuit. It just wouldn't be advisory. It wouldn't be smart. It clearly wouldn't be within the confines of the law. But that brings us to the questions of immunity, Your Honor, and it brings us between the question of what you're here to decide for the district court. And you're here to decide whether the federal district court improperly and overbroadly expanded Oklahoma's statutory immunity found in the Governmental Tort Claims Act in 51 OS 152 Part 7, Subsection B7 to include Dr. Holdman despite, one, no contract actually existing between Dr. Holdman and the Eastern Oklahoma Medical Center, and two, express denials in the contracts before the case that preclude any employment relationship and even preclude the idea that Dr. Holdman could be an independent contractor for EOMC. And those are the facts before the case that, insofar as they don't exist, amply does not meet the burden for statutory immunity. Well, there was a contract between NES and the Eastern Oklahoma Medical Center, correct? Absolutely, Your Honor. And then there was a contract between NES and Dr. Holdman. Absolutely. And then through those combinations of contracts, Dr. Holdman was providing medical services at the facility. That's correct, Your Honor. Okay. So why isn't that enough to say that Dr. Holdman was under contract to provide those services? And this is the entirety of the issue of the case for immunity, so I think it's the most prorative I thank you for it. Whenever you look at 510S1527B7, the plain meaning of the statute says that it has to be a licensed medical professional under contract with a city, county, or state entity who provides care to inmates. In effect, whenever you look at the plain meaning, it's identifying two parties, the licensed medical professional and the county entity. It doesn't envision and it definitely explicitly doesn't state that a third-party intermediary independent contractor can suffice to bridge that gap. That's important whenever you look at statutory construction rules laid down by the Oklahoma Supreme Court. I guess that's part of my question, though. Well, I don't think that it envisions a contract relationship with Dr. Holdman in that particular text. And there's several parts of the contract that you have to look to between EOMC and NES that speak to that. Whenever you look at subpart E on page 26 of the appendix, it specifically says, the physicians and the provider will not be employees of EOMC for, quote, any purpose. That would include governmental tort claims purpose. Pages 26 and 27 of the appendix also indicate that it's provider, NES specifically, that is responsible for billing and collecting money from the physician service to the client. Page 29 of the appendix has part 3.3. That's especially important because it indicates that EOMC has no control and no supervisory authority over any of the physicians that NES hires to staff the medical institution. And evincing even more the intent of the parties is the non-solicitation agreement found on pages 35 and 36 of the appendix, which indicate that EOMC may not make any direct or indirect contract with the physicians that NES brings. And if they do so, they face subject to a liquidated damages provision. The NES contract with Dr. Holdman mirrors several of those sentiments. It indicates that Dr. Holdman is an independent contractor of NES only, which means he's an independent contractor of an independent contractor. NES pays Dr. Holdman. NES bills the patients to pay Dr. Holdman. And on those particular aspects, along with the restriction against Dr. Holdman trying to seek a contract with EOMC two years after his termination of that agreement, all of that speaks to the idea that NES wanted to protect the financial interest of its doctors and that EOMC didn't want to exert any control or responsibility for the doctors. They contracted with NES to run the emergency room. EOMC has its own staff doctors that it has to run the rest of the hospital, but they didn't want to run the emergency room, and that's why NES was brought in in that particular situation. So we're on procedural posture here is on a motion to dismiss. Is that correct? Yes, Your Honor. It was a 12B6 motion entered by Dr. Holdman at the time. So this may be getting a little technical, but why shouldn't you be bound by your statement in the third amended complaint, paragraph 21, that Dr. Holdman was employed by the hospital? Paragraph 83, Dr. Holdman was a hospital employee. Regretfully, Your Honor, those statements were made, and an appellant has to own them. But you can always ask to amend. Federal Rule of Civil Procedure 15A, along with the Supreme Court's ruling in Fulman v. Davis, indicate that leave should be freely given unless there's an express finding of one of several factors. Those factors are prejudice, undue delay, dilatory motive, bad faith, repeated failure to cure deficiencies, or futility. When I look at the district court order on pages 5 and 6 of this amendment, it makes reference to the inartful and imprecise allegation that plaintiff made in the third amended complaint. But it ultimately comes to the conclusion that we don't find any set of circumstances where Dr. Holdman can be treating patients at this location without being under contract with the hospital. That part of the ruling is clearly in contrast and contradicted by the direct evidence that was before the court in the contracts provided by Dr. Holdman. Additionally, and while I understand the frustration of a court wanting to have appellants and plaintiffs plead correctly the first time whenever they get it, this was the first complaint that had been done against Dr. Holdman in that second amended complaint, and there was new defendants identified later on before the third amended complaint. So there's not a repeated failure to cure a deficiency as per that particular part, which leaves futility as the only reason to deny leave to amend. And in this case — I don't understand. I don't understand what you said. I thought that after the issue was raised about whether he was an employee or not, that Burke filed a new complaint and still continued that allegation about he was employed by the hospital or whatever that language was. Absolutely, Your Honor. And, Judge, I disagree with Dr. Holdman's characterization of that timeline of events. Yes, the second amended complaint did contain the exact same inartful, imprecise allegations as the third amended. And that was after the governmental immunity claim was asserted, right? It was, but it was denied as moot. It was denied as moot by the district court because two new defendants, two new jail doctors had been identified and entered into along that particular course. So the judge never made a ruling outside of mooting the decision and allowing it to be — and, by the way, by stipulation, Dr. Holdman allowed the amendment to the complaint because it was done for the purpose to add two new defendants in that case. Your Honor — Well, is your position that you didn't know about the problem with the complaint? I guess I just don't understand. I really — I'm trying to nail down why the complaint was not amended. If you knew about it, why wasn't it amended? Counsel had received the brief from Dr. Holdman at the time. Counsel should have made the amendment. And that's frustrating for the court. And there's not a justification other than it was forgotten at the moment due to adding new defendants under the terms of the statute of limitations, which was the primary concern with the third amended complaint. Now, that still, even with that frustration, does not rise to the level of a, quote, repeated failure to cure a deficiency as outlined by the Supreme Court in Foman v. Davis. And I don't believe that's even what the district court has identified as its reason to deny a leave. It's denying leave because it's futile. Because if immunity was there under the facts of the contracts presented to the court, then there's no need to allow leave to amend. Well, I thought the court used both arguments. Futile, but then, of course, it ended. Also, also, the reason for my ruling is because of that pleading. If you had — you ultimately made a motion to amend, right, that was denied? Motion to reconsider, yes, Your Honor. Yeah. Not a motion to amend? You didn't tender a new pleading? The motion to reconsider indicated and requested motion for leave to amend to fix that and assert the facts as outlined in the contracts that Dr. Holman was not employed at the hospital, that he was not under contract at the hospital. All of those things were asserted. So does this get to — does your ability to prevail turn on whether we find that there was an abusive discretion by the district court to deny your motion to reconsider and ultimately to amend? Ultimately, I think if you determine under 12b-6 de novo review that the immunity doesn't exist, then ultimately that would make it an erroneous conclusion of law to begin with, and that suffices as an abusive discretion as outlined in Appley's brief. So I believe that that's the case, but you can also — Well, I take it, counsel, then, that the working material for the Rule 12b-6 motion was your amended complaint, but also the contracts, that the contracts are sort of incorporated into the analysis. Is that the way the district court looked at it? Yeah, appellant — yes, appellant introduced those contracts for that purpose, which ultimately is why it's necessary to allow leave to amend, because the contracts themselves — When you say appellant — Of Appley. Appley. Dr. Holman introduced the contracts. And that doesn't convert this into a summary judgment situation? Under the way that the district court had identified it, I believe on pages 4 and 5, they didn't expressly identify that, but it can be treated that way for that same purpose, except that it's a question of law regarding immunity, statutory construction, and it's still a de novo review under that term, which would preclude a finding that's different from that. Your Honor, I'm over time. I think you're out of time. I think you're out of time. Absolutely, Your Honor. Thank you, counsel. Thank you. Good morning. Sid Smith for Dr. Holman. May it please the Court. I think first, just to try to keep in the flow of things to address the jurisdiction issue, I think it's been covered, but I did want to point out one other potential danger. In Oklahoma, there's 180 days to serve a petition. Assuming it wasn't refiled, yes, the time period, the saving statute, the statute of limitations have run, but I don't know for sure that there's not one out there. I suspect there's not, but that's just one other thing that could be considered. There's been talk of trying to expand the protection of liability to Dr. Holman or NES and protect their doctors from any financial loss. This argument, I believe, stems from the legislature's intent to protect inmates, to protect prisoners, to increase their access to doctors, especially in smaller communities that have political subdivision hospitals. They've said that if these hospitals have a contract or an agreement with a physician who happens to participate, who cares for people under the custody of law enforcement, that they are immune. They're creating immunity, which is a benefit to... The statute to give Dr. Holman immunity. Would that be a fair description of what you're saying? Absolutely, Your Honor. Well, then let's, before we get to the policy arguments, what about the statute itself, especially the 152.77 language about under contract with? How can Dr. Holman be an employee under that provision when there is no contract between him and the Eastern Oklahoma Medical Center? First of all, there is a provision in the contract that says that if approved by EOMC, physicians who participate in care at the hospital will be considered as having being added to Exhibit B to the contract. All right, now I need a little help. Which contract are you referring to and what's Exhibit B? The initial agreement, the hospital's effort to staff its emergency department using NES to handle administrative... Okay, so that's the hospital NES contract. Yes, sir. Okay, and tell me what Exhibit B is. Exhibit B is a list of providers. It was discussed in the district court's order of dismissal. It says that there's only one doctor listed on it at the time, but other doctors can be added to it as they get additional providers to staff the emergency department. That list only says hospital saying, here's doctors that are admitted to practice in our hospital. That wasn't represented to be these are going to be doctors that are employees. In fact, the contract over and over again says they're not going to be employees. I agree with that. We have not argued that Dr. Holman was an employee of EOMC. We've argued here that he was an employee of the state because he falls in that definition of an employee of the state. But every contract that we have, the only two contracts that we have, over and over again say he is not an employee. It says he is not an employee of EOMC. Yeah, but it says he's an independent contractor. And if he's an independent contractor of NES, it's hard to see how he would be anything more for the people that NES served. When he's approved as a provider by EOMC under that contract with NES, when he signs his own contract, he gains some obligation. But he never did sign another contract. The only contract he has is with NES. He signed no contract with EOMC or with the jail. That's correct. Not with the jail, certainly. And not with the hospital. There's no indication he signed any. No, the hospital. And we're talking about just written contracts in this context. He did sign one with NES that an EOMC approved him to be a provider. That puts him on as an independent contractor. NES and by extension the hospital. Because he has obligations under that NES contract that he's agreed to abide by in his own contract with NES. He has obligations in the contract between NES and EOMC. He has to provide care in a standard manner. He is responsible for supervising nurses and other department non-physician personnel, non-allied health professionals, which would be PAs and physicians, things of that nature. He has part of the contract. He can only physicians, PAs, and advanced registered nurse practitioners, they're the only ones who can perform services under the agreement. So this is an effort by EOMC to staff its ER. Excuse me. Well, could I just ask whether you're making an argument about the statute, that is 1527B7. Mr. Casey said that the language is plain and under the facts of this case, Dr. Holdman wasn't under contract. You're making a counter argument. Are you saying that the statute can be read narrowly or more broadly, that there's an arguable interpretive question here regarding the statute? I think given the nature of the statute, the only provision of the one that matters as far as being an employee of the state is under contract. The others are undisputed and agreed to by everyone throughout. Well, but my question goes to the meaning of under contract. Does that have a clear meaning in the context of this case, or is there more than one reasonable way to apply it to what we have here by way of these contracts? I think any way that affects its purpose would be reasonable that I can think of. And I know the district court said I can't think of a reason other than that he had an agreement with the hospital to be there. It doesn't say a written contract. It doesn't say he has to perform the service here or there. When he shows up in the emergency department and he starts taking patients of the hospital with their approval and their agreement, he has an agreement. He has, it doesn't say a verbal contract, an implied contract, a written contract. I think anything that narrows that contract definition defeats the purpose of the statute or potentially defeats the purpose of the statute, which is to assist these tort claim hospitals in having adequately staffed emergency departments. Well, okay. But if the application of that language, assuming that it's at least arguable, I take it Dr. Holman has the burden as the party seeking immunity to show that he has immunity. Would you agree with that? I would agree with that. Okay. Is that what, is there at Oklahoma law to that effect? I'm sure. The underlying district court found that the contracts and the fact he was operating in the EOC ER met that burden. I can't cite your Honor to a specific authority right now. All right. But to the extent that we have at least an arguable issue, doesn't the Oklahoma Supreme Court's decision in Sullins instruct us to resolve such an issue in the OGTCA against extending immunity? I think the difference with Sullins, Your Honor, was that the party seeking immunity was seeking to qualify as an agency. There was no connection to the agency. Here we have a specific statute that says if you were these three things, you are an employee of the state by definition. Sullins, I believe, was trying to take a contractual thing and make themselves an agency. I think that falls under a different section of immunity. Here we have a specific grant or a specific failure to waive immunity. That is physicians who are assisting county entities, taking care of inmates that the state and the county and the city have the obligation to provide medical care to, they will be extended immunity as long as they're doing so with agreement. They don't have to get paid. It doesn't matter where specifically they do it. But if we have licensed health care providers who are participating with the agreement of a county entity to take care of inmates or others in custody, then they're immune. Would it be fair to say that the Oklahoma Supreme Court has never addressed a situation like this in applying the Act? That is, we have NES as the contractor, but then we have Dr. Holdman, who contracts with NES, as the provider. Is this uncharted territory in terms of Oklahoma law? I think especially so in terms of 152.7b.7. I couldn't find any cases discussing that specific statute, and I did not see a case on point as far as the contractual relationship narrowing or broadening it either way. If it is uncharted territory, how do you respond to the Oklahoma Supreme Court case in Gunn, which says that immunity must be explicit and will not be inferred unless clear and unambiguous? And then you have a whole string of cases where Oklahoma seems to have denied immunity, Iker and Price and Nelson and Bryan, where the whole trend seems to be that unless it is not ambiguous, unless it is not uncertain, you don't get the immunity. I think the cases Your Honor just cited were interpreting a different provision, certainly. Wouldn't that general rule about it has to be clear and ambiguous or you don't get it, wouldn't that apply to the entire Governmental Immunity Act? Well, I don't think it would apply to one where there is a specific exception or a specific delineation of what immunity is in certain circumstances, and you have the district court found, well, I guess there's three of them were uncontested and the other one was these contracts, according to the district court, did convince the district court that that burden was met. There is an agreement. How else would he be there if there was an agreement? Is it your argument that this is clear and unambiguous in the case, that he was an employee, or at least that he was entitled to immunity? That he was entitled to immunity, yes, Your Honor. I do not think who he's an employee of is a different question. I think there's two ways to look at what the district court... So what was the triggering event? We know it's not that he was not an employee or that he was. What factor, single factor, makes it clear and unambiguous that he qualifies as for governmental immunity here? Just one unambiguous factor that is decisive. He's taking care of someone in the custody of law enforcement with their permission of a county entity that he provide medical care in their emergency room. Well, he didn't provide the care in the jail. Isn't it often the case that somebody has a heart attack in the jail or a cancer that requires a specialty and they send them out to a private doctor in a private hospital and say, look, this leukemia, we don't have the ability to treat it here. You treated a private doctor. That's clearly pursuant to the request of the jail, but nobody would argue that that doctor becomes an employee of the hospital, I mean of the jail, and gets governmental immunity. In fact, those cases say no. Right. And I think I see the point Your Honor is making. I wouldn't argue that he's an employee of the jail or the hospital, but he's gone to a different level. There's a difference between being an employee of a political subdivision like the hospital or the jail and being an employee of the state.  Well, what other entity of the state do we have other than the hospital or the jail that he might be an employee of the state? That's the only two agencies of the state that he possibly could be an employee of. Right. Yes, that's the price case. And I think that was a mistake in the price case. We're not saying he's an employee of an agency or a political subdivision like a jail or a hospital. He is, by definition, an employee of the state of Oklahoma who … What agency of the state? Just the amorphous state? I mean, it's odd. You say, oh, he's not an employee of the jail. He's not an employee of the hospital. Those are the two state agencies that he dealt with. But somehow, even though he's not an employee of either explicit agency of the state, he's got an amorphous employment of the state. What part of the state is he employed by then? I don't know what specific part. Your Honor, I just know that the immunity that he has in helping take care of prisoners, he's defined as an employee of the state itself for purposes of the immunity provisions of the Oklahoma Governmental Tort Claims Act. But I can't answer, Your Honor, any more specifically than that, and I apologize. That's all right. Thank you. That's helpful. Well, counsel, before your time is up, can I ask you, have you abandoned your argument that the complaint alleged employee status and the complaint was not amended? No, I haven't, Your Honor. I didn't get to it and got off on a tangent, and that's my fault. I apologize. But if the district court, after approximately 11 months, after eight months after Dr. Holdman was deposed, after many months since we filed our first motion to dismiss where we were the ones who pointed out, he's not a traditional employee of the hospital. He works there. He's employed there doing his job. But he is not a W-2 employee of the hospital. He's something else. He works there under contract. They didn't amend it after that. They didn't amend it until months later. Well, they did. They filed one amended petition after that, one amended complaint, excuse me. And then we filed the motion to dismiss again. And then the motion to dismiss was granted after being fully briefed, and it was the day that they filed a dismissal with prejudice against EOMC. After settling with EOMC, the only allegation against EOMC, being that Dr. Holdman is your employee and you're responsible for his conduct, the same day they settled was the day they filed their motion to reconsider and change their mind. And I think perhaps that went into the district court's reasoning and wasn't an abuse of discretion after that much time and that much discovery and that many chances have passed. The district court said, well, you're bound at this point by what you alleged explicitly and had a chance to fix and didn't. Thank you. Thank you, counsel. Thank you. Okay. I think we've exhausted the time for both sides. Thank you, counsel, for your arguments. The case will be submitted and counsel are excused.